THE STATE, ATKINSON, PROSECUTOR, v. BISHOP ET AL.

1. The ancient rule of the common law, that it was of the essence of a highway that it should be laid to a market town, or from town to town, and be a thoroughfare having no *terminus a quo* or *terminus ad quem,* has been overruled. It is now not essential to a highway that it be a thoroughfare. If, in fact, it is open and common to all the public, it is a public highway, without regard to the place of its termination.

2. A road may be laid out as a public road, under our statute, though it have, at one end, no outlet, and terminate on private property.

3. The fourth section of the act concerning roads, which provides for laying private roads, does not limit the public right of laying public roads. Its purpose is solely to provide a means for private individuals to obtain access to highways, under circumstances in which a public road might not be deemed necessary.

4. The jurisdiction to determine whether the public road applied for is necessary for public convenience, is lodged exclusively in the surveyors of the highways, and the power to review their determination is conferred exclusively on the freeholders who shall be appointed to review their proceedings.

5. The Court of Common Pleas has jurisdiction to determine whether the proceedings have been conducted in compliance with the statute, and may set aside the report of the surveyors, or the certificate of the freeholders, for non-conformity with the requirements of the statute, or illegality in matter of substance, but it cannot review the judgment of the surveyors in determining that a public road was necessary, and set aside their return, on the ground of error in judgment.

On *certiorari* to the Burlington Pleas.

Argued at November Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the prosecutor, *F. Voorhees.*

*Contra, Garrit S. Cannon.*

The opinion of the court was delivered by

DEPUE, J.    Application for a public road, in the township of Mansfield, in the county of Burlington, having been made by ten or more freeholders and residents in said county, surveyors were appointed to lay out such road. The road applied for is described as beginning " at a stake standing on the easterly side of a road leading from the main street, in the village of Columbus, to the Columbus canning-house," and as ending " at a stake in Bishop & Page's coal and lumber-yard, near the easterly line of the Kinkora and Springfield railroad."

The surveyors having laid out the road applied for as a public road, on the coming in of their report, the Court of Common Pleas was applied to, to set aside the return, on two grounds :

*First.* That the appointment of surveyors to lay out the road applied for as a public road, was illegal, and not authorized by law.

*Second.* That the road so applied for, and attempted to be laid out, was a private road, and not a public road.

The testimony of the witnesses, which had been given before the surveyors, tending to show that the road, when opened, would only be used by such persons as might have occasion to transact business at Bishop · & Page's coal and lumber-yard, was used before the court on the hearing of the application.

The court having refused to set aside the return of the surveyors, this writ of *certiorari* was sued out.

The objection that the road, as applied for, was not a public road, is founded on the fact that its terminus is on private property.

The ancient doctrine of the common law, that it was of the essence of a highway that it should lead to a market town, or from town to town, and be a thoroughfare having no *terminus a quo* or *terminus ad quem,* has been overruled. It is not essential to a public highway that it be a thoroughfare. It may be a *cul de sac.* If, in fact, it be common to all the public, it is a public highway, without regard to the place of its termination. *Rugby Charity* v. *Merriweather,* 11 *East* 375, *n; Bateman* v. *Bluck,* 18 *Q. B.* 870; *Campbell* v. *Lang,* 28 *Eng. L. and Eq.* 30. A road may be lawfully laid out or dedicated to public use as a highway, though it have, at one end, no outlet, and abut on private property. *People* v. *Kingman,* 24 *N. Y.* 560; *People* v. *Van Alstyne,* 3 *Keyes* 35.

By the act of 1760, provision was made for laying out public roads "from one town or division to another, or to any public landing-place, market, or mill, or from any town to the king's highway." 2 *Nevill* 346, § 3. Under this act, only such roads could be laid out as public roads as came within this description. But this restriction on the power to create highways, was removed by the act of 1774, to continue in force for three years. *Allinson* 387, § 3. By this last statute, when any persons, not less than ten in number, being freeholders, should think a public road to be necessary in any

city, township, or precinct where they dwell, or in either of the cities, townships, or precincts next adjoining, they were authorized to apply to surveyors to lay the same. By the act of 1792, jurisdiction over the subject was first given to the Court of Common Pleas. *Acts*, 1792, *p.* 815. By this act, it was enacted that when any persons who are freeholders, and not less than ten in number, shall think a public road necessary  *  *  * in any part of the county in which they dwell, such persons shall apply, in writing, to the Inferior Court of Common Pleas of said county ; upon such application being made, the said court was required to appoint six of the surveyors of the highways of said county to act in the premises. This provision, with some verbal changes, was re-enacted in 1799 (*Pat.* 387, § 3,) and, in substance, is in force at the present time. *Revision, p.* 718, § 1. Under this legislation, public roads may be laid out anywhere in the state, where public necessity or convenience requires it.

It was contended that, under the statute, a road which has a terminus on private property, must necessarily be a private road, and be laid out under the fourth section of the act, and opened and worked at private expense. This argument, it will be borne in mind, denies the power of the public to provide highways having such a terminus, without regard to the public convenience that would be promoted thereby, rather than the propriety of the exercise of the power in this particular instance. It is not an unfrequent occurrence that streets are opened and dedicated, and become public highways by acceptance, which have a termination on private property ; or streets are laid, under public authority, so far as the growth of improvements extend, or leading into public squares, beyond which there is no exit. Roads are sometimes laid to cemeteries, or depots, or to waters not navigable—in fact, where there is no passage beyond—or into the country, so far as it is practicable to go, because of the interposition of some natural barrier, as a mountain, which prevents its further extension, or because the growth and development of

the locality do not require the further construction in the present. To deny that these ways are public highways, would be contrary to the settled doctrine of the courts of this state; and to hold that they might not be obtained by the public, under the road act, would lead to great inconvenience, and be an unwarrantable restriction of the comprehensive language of the first section of the act.

The fourth section of the act which provides for laying private roads, was not intended to limit the public right of laying public roads. Its purpose is solely to provide the means for private individuals to obtain access to and from public highways under circumstances in which a public road might not be deemed necessary.

There is no legal disability on the public to have public highways in this state wherever public necessity requires it, or public convenience would be promoted; and, upon the presentation of an application by the requisite number of freeholders—the requirement of the statute, as to notice, being complied with—it is the duty of the court to make the appointment of surveyors, that the necessity for a public road may be inquired into.

In the present case, the application and proceedings in connection therewith, were in compliance with the statute, and the court had no discretion to refuse to make the appointment.

The jurisdiction to determine whether the public road applied for is necessary for public convenience, is lodged exclusively in the surveyors, in the first instance. They are " to view the premises, and may, if they shall think it necessary," lay out the road. *Revision, p.* 721, § 5.

The mode of reviewing their judgment and discretion is also specifically pointed out by the statute. Any person thinking himself injured or aggrieved by the action of the surveyors, may file a caveat, which shall be a *supersedeas* to further proceedings until the next court; and the court, thereupon, shall appoint six of the chosen freeholders of the county, who shall view the premises and certify to the court

whether the said laying out was necessary and useful, or unnecessary and injurious, which certificate shall be final and conclusive. And if such freeholders neglect to certify, the clerk is required, by order of the court, to record the return of the surveyors, and the road so laid out and recorded is declared to be a lawful highway. § 8.

Throughout the whole of these proceedings, the Court of Common Pleas exercises a special statutory jurisdiction. The court is under a duty to make the appointment of surveyors, if the application is in conformity with the statute ; and, on the filing of a caveat, the appointment of freeholders to review the action of the surveyors, is equally a duty. As a court, it may determine whether the proceedings have been conducted according to the directions of the statute, and may set aside the report of the surveyors, or the certificate of the freeholders, for non-conformity with the statutory requirements, or illegality in matter of substance. *State* v. *Conover*, 2 *Halst.* 203. But the jurisdiction to determine whether the laying out of the road applied for as a public road is necessary, is conferred on the surveyors exclusively, and the power to review their determination is lodged exclusively in the freeholders who shall be delegated to review their action. Unless the decision of the surveyors as to the necessity of laying the road as a public road, shall be reversed by the freeholders, the return of the surveyors is to be recorded, and the road becomes a public highway.

The court very properly refused to review the judgment of the surveyors in this respect, upon the facts which they had considered.

The surveyors had before them the testimony of witnesses, which is contained in the printed book, and, in addition thereto, a petition asking for the road, and representing that the laying of it would be for the public good, signed by two hundred and thirty of the residents of the township.

If the surveyors erred in judgment, in deciding that a public road was necessary, a review of their decision was obtainable only by means of the appointment of freeholders.

The other reasons assigned for reversal had been considered, and found to be untenable.

The proceedings of the Court of Common Pleas should be affirmed, with costs.